UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
FRANK DOLNEY,

         Petitioner,

      -against-

UNITED STATES OF AMERICA,

         Respondent.
----------------------------------------------------------------X

**MEMORANDUM & ORDER**
**07-CV-4040 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

  Petitioner Frank Dolney, *pro se*, seeks to vacate his sentence pursuant to 28 U.S.C. § 2255. (See Petition (Docket Entry # 1).) Petitioner asserts: (1) that he was denied effective assistance of counsel because his attorney failed to file a notice of appeal of his conviction, failed to object to judicial factfinding at sentencing, failed to properly advise Petitioner as to his guilty plea, and failed to move to dismiss the indictment based on a Speedy Trial Act violation; and (2) that the prosecutor who handled Petitioner's case committed misconduct by failing to withdraw from the case in light of his previous participation in a Securities and Exchange Commission ("SEC") investigation of Petitioner. Petitioner also requests that this court recuse itself. For the following reasons, the Petition is denied.

**I. BACKGROUND**

  On September 19, 2005, Petitioner pleaded guilty in front of this court, pursuant to a plea agreement, to Counts One and Five of a superseding indictment charging him with conspiracy to commit securities fraud and substantive securities fraud, in violation of 18 U.S.C. § 371 and 15 U.S.C. § 78j(b). (See Plea Entered, United States v. Pirgousis et al., No. 04-CR-0159 (NGG)

1

(E.D.N.Y. Sept. 19, 2005) (case hereinafter referred to as "Pirgousis"); Plea Agreement (Ex. 3 to Government's Memorandum in Opposition ("Gov. Mem.") (Docket Entry #7)).) Petitioner was charged with participating in a scheme to profit from the selling of securities at artificially inflated prices. (Gov. Mem. at 3-4.)

According to the affirmation of Petitioner's then-attorney, Peter J. Tomao, submitted with the government's opposition papers, the defense was prepared to proceed to trial when, shortly before the scheduled start of trial, Petitioner was arrested for violating his bail conditions; while incarcerated, Petitioner suffered a heart attack. (Affirmation of Peter J. Tomao ("Tomao Aff.") (Gov. Mem. Ex. 1) ¶¶ 3-4.) According to Tomao, Petitioner's arrest on the bail violation caused Tomao and Petitioner to be concerned that Petitioner would face a harsh sentence if convicted at trial; Petitioner's heart attack also caused a reconsideration of defense strategy. (Id. ¶¶ 4-5.) As a result, Petitioner directed Tomao to enter into plea negotiations with the government, and an agreement was reached. (Id. ¶ 5.)

The Plea Agreement set forth what the U.S. Attorney's Office estimated would be the applicable offense level under the United States Sentencing Guidelines: an offense level of 30, carrying a sentencing range of 97 to 121 months, assuming no prior convictions. (Plea Agreement ¶ 2.) In arriving at this conclusion, the U.S. Attorney's Office assumed a base offense level of 6; an additional 20 points for losses of more than $7 million; an additional two points for more than 10, but fewer than 50, victims; an additional two points for the use of sophisticated means; an additional two points for Petitioner's role as an organizer; and a reduction of two points for Petitioner's acceptance of responsibility. (Id.) The Plea Agreement noted that Petitioner "stipulate[d]" to that Guidelines calculation; a hand-written note, initialed by both Petitioner and his attorney, added that this stipulation did not include "the two-point

2

enhancement for aggravating role . . . . The defendant reserves the right to argue about the applicability of this enhancement at sentencing." (Id.)

Finally, Petitioner agreed not to "appeal or otherwise challenge" his conviction or sentence in the event that he received a sentence of 97 months or less. (Id. ¶ 4.) Notably, the number "97" in this paragraph was handwritten over the crossed-out number "121," an amendment that was again initialed by both Petitioner and his attorney. The Agreement made clear that Petitioner's waiver of his right to challenge his sentence was "binding without regard to the sentencing analysis used by the Court." (Id.) Tomao states that he "explained to [Petitioner] in detail the appeal waiver and its implications" and that Petitioner "initialed a change made to this paragraph and signed the final agreement." (Tomao Aff. ¶ 7.)

At the plea proceeding in front of this court, Petitioner stated that he was clear-headed, despite medications he was taking for psychological conditions including depression and anxiety; Tomao added that he had no doubt as to his client's competency. (See Transcript of Guilty Plea, Pirgousis (Sept. 19, 2005) ("Plea Tr."), at 3-7.) Tomao stated that he had discussed the plea with his client, and Petitioner stated that he was satisfied with the assistance Tomao had provided so far. (Id. at 6-7.) Petitioner then stated that he had read the Plea Agreement and discussed it with Tomao, who had answered any questions he had about it; Tomao confirmed that he had discussed the agreement with Petitioner, and was satisfied that Petitioner understood it. (Id. at 12-13.) In particular, Petitioner stated he understood that he had "stipulated" to the Guidelines calculation proposed by the government, with the exception of the two extra points for aggravating role. (Id. at 21.) Finally, the court asked Petitioner if he understood that he would have no right to challenge his sentence if the court sentenced him to 97 months or less; Petitioner stated that he did. (Id. at 22-23.)

At sentencing, which took place on January 12, 2007, the court again asked Petitioner if he was satisfied with the assistance his lawyer had provided, and Petitioner said he was. (Transcript of Sentencing, Pirgousis (Jan. 12, 2007) ("Sentencing Tr."), at 2.) The government – having conducted further negotiations with Petitioner's counsel (see Tomao Aff. ¶ 12) – then indicated that it had revised its Guidelines calculation (see Sentencing Tr. at 6). The government continued to assume a base level of 6, plus 20 points for losses of more than $7 million and two points for "sophisticated means." (Id.) However, the government now requested an additional four points for the number of victims (over 50), instead of the two points originally proposed (for over 10); those additional two points were offset by the government's abandonment of its request for a two-level increase for Petitioner's role as an organizer. (Id.) Furthermore, the government now sought a reduction of three, rather than two, points for acceptance of responsibility. (Id.) This put Petitioner's offense level at 29, rather than the 30 originally proposed in the Plea Agreement, a level carrying a sentencing range of 87 to 108 months. (Id.) Defense counsel agreed to this calculation, as did the court. (Id.) The court sentenced Petitioner to 87 months in prison, along with restitution and three years supervised release, and permitted Petitioner to self-surrender two months after sentencing. (Id. at 27, 41.) The court then informed Petitioner of his right to appeal his sentence and said: "Your time to appeal is extremely limited and, therefore, you should discuss with your attorney at once whether an appeal would be worthwhile." (Id. at 29.) The court also told Petitioner that his ability to appeal was "extremely limited" since he had "agree[d] not to appeal or otherwise challenge the sentence" if it was 97 months or below. (Id.)

## II. DISCUSSION

Under 28 U.S.C. § 2255, a court may "vacate, set aside or correct" a conviction or sentence "imposed in violation of the Constitution or laws of the United States." However, "[i]f

4

it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Rules Governing § 2255 Proceedings for the United States District Courts, Rule 4(b). In section 2255 proceedings, a petitioner bears the burden of proof by a preponderance of the evidence. See Triana v. United States, 205 F.3d 36, 40 (2d Cir. 2000).

### A. Petitioner's Recusal Request

Petitioner requests that this court recuse itself under 28 U.S.C. § 455, since, Petitioner argues, the court created an appearance of impartiality and demonstrated bias by, on one occasion, expressing impatience with Petitioner's attorney. (Petition at 5; Petitioner's Memorandum of Law ("Pet. Mem.") (Docket Entry # 1-2, with additional pages appended at Docket Entry # 1-3) at 14-15, and addendum to Pet. Mem. entitled "Reasons for Recusal."). The court was not biased against Petitioner, as demonstrated by his sentence at the bottom end of the applicable Guidelines range and by the court's decision to permit Petitioner to self-surrender. Petitioner's recusal request is denied.[1]

### B. Petitioner's Ineffective Assistance of Counsel Claims

#### 1. The Voluntariness of Petitioner's Plea and Waiver of His Right to Challenge His Sentence

Petitioner claims that, as a result of counsel's ineffective representation, he did not knowingly or voluntarily enter into the Plea Agreement or the waiver provision therein. (Petition at 4; Pet. Mem. at 5, 10-14.) Since this claim goes to the validity of the waiver, the claim is not

---

[1] Petitioner apparently believes that the court demonstrated bias by sentencing him above his "statutory maximum," which Petitioner believes was six months. (See Pet. Mem. at 15.) Petitioner is advised that, while six months was the maximum sentence allowable for a Guidelines range of 6, his Guidelines range was *not* 6 – this was his *base offense* level – but was instead 29, a Guidelines range stipulated to by the defense. Furthermore, under 18 U.S.C. § 371 and 15 U.S.C. § 78ff, he faced a *statutory* maximum of 15 years in prison.

5

itself waived. See United States v. Monzon, 359 F.3d 100, 118-19 (2d Cir. 2004) (waiver provision of plea agreement invalid if entered into without effective assistance of counsel). However, the record conclusively refutes Petitioner's claim. See Chang v. United States, 250 F.3d 79, 85 (2d Cir. 2001) (where record on a section 2255 motion is sufficient for the court to make a factual determination, the court need not hold a testimonial hearing).

Petitioner claims, in particular, that counsel failed to inform him that he had a right to have the government prove, beyond a reasonable doubt, every fact affecting his sentence, and that, had he known this, he would not have pleaded guilty. (Pet. Mem. at 11, 12.) As discussed *infra*, no such right exists, and thus counsel was not ineffective for failing to explain it.[2]

Petitioner further claims that defense counsel failed to inform him that his right to attack his sentence on appeal and collateral attack "might be foreclosed" by the Plea Agreement. (Pet. Mem. at 11, 13.) The record demonstrates that the opposite is true. Petitioner stated, during the plea proceeding, that he had discussed the Plea Agreement with counsel, who had answered all his questions about it. (Plea Tr. at 12.) In particular, Petitioner stated that he understood that he had "stipulated" to the applicable Guidelines calculation and that he understood the waiver provision. (Id. at 21-23.) This is confirmed by Tomao, who stated during the plea proceeding, and states again in his affirmation, that he explained the Plea Agreement and waiver provision to Petitioner in detail. (Tomao Aff. ¶ 7; Plea Tr. at 6-7, 12-13.) Petitioner's understanding of the waiver provision is further indicated by his having personally initialed it. (Plea Tr. at 13; Tomao

---

[2] Petitioner states that, at a hearing on the instant Petition, he would be able to demonstrate, with evidence not yet part of the record, that "credible challenges" could have been brought to the facts used to support the Guidelines range. (Pet. Mem. at 12.) This claim is made in the context of Petitioner's erroneous belief that such facts had to be proved to a jury beyond a reasonable doubt. Furthermore, the vague claim that hypothetical "credible challenges" could have been made is insufficient to cast any doubt on the knowingness or voluntariness of Petitioner's plea.

6

Aff. ¶ 7.) The record makes clear that Petitioner understood that, by pleading guilty as per the Plea Agreement, he was waiving his right to challenge any sentence of 97 months or below.[3]

Petitioner claims that he was "coerced" and "manipulated" into pleading guilty by misleading "threats," communicated by the government and defense counsel, regarding the severity of the sentence he would face if he went to trial. (Pet. Mem. 11, 14.) Petitioner faced a statutory maximum prison term of 15 years if convicted only on the counts to which he pleaded guilty. See 18 U.S.C. § 371 (five-year maximum term for conspiracy); 15 U.S.C. § 78ff (2001) (10-year maximum term for securities fraud).[4] He was sentenced to a term of just over seven years. Furthermore, one of Petitioner's co-defendants, William G. Brown, was found guilty by a jury of conspiracy to commit securities fraud and substantive securities fraud and sentenced on those counts to the maximum term of 15 years in prison. (See Judgment, Pirgousis (Dec. 15, 2006).)[5] Tomao explained that, in negotiating the plea, he hoped to avoid such a result. (See Tomao Aff. ¶ 11.) While Petitioner may have felt pressured to plead guilty as a result of defense counsel's warning that he faced a harsher sentence if he went to trial, such a warning was reasonable and accurate.

In sum, the record demonstrates that Petitioner, effectively assisted by counsel, knowingly and voluntarily pleaded guilty and waived his right to challenge his sentence.

2. **Counsel's Failure to File a Notice of Appeal**

Petitioner claims he instructed Tomao to file a notice of appeal but that Tomao failed to do so. (Petition at 2, 4; Pet. Mem. at 4-5, and appended Affidavit of Frank Dolney ¶ 8.) A

---

[3] It is also difficult to believe that Petitioner, who, proceeding *pro se*, apparently prepared his own clearly-written and cogent section 2255 petition, would have been unable to understand the waiver provision.

[4] In 2002, after most of the conduct charged in the indictment took place, Congress increased the maximum sentence for securities fraud from 10 years to 20 years. See 15 U.S.C. § 78ff(a).

[5] Brown was sentenced to concurrent time on money laundering counts.

criminal defendant's lawyer must file an appeal from a conviction or sentence when the defendant specifically requests it, even when the defendant has waived his right to appeal. See United States v. Campusano, 442 F.3d 770, 774-75 (2d Cir. 2006). Counsel's failure to file a requested notice of appeal in these circumstances constitutes *per se* ineffective assistance, and following such failure "a defendant is entitled to a new appeal without showing that his appeal would have had merit." Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). Furthermore, when counsel fails to file a requested appeal from conviction or sentence, a court "may not dismiss the hypothetical appeal as frivolous on collateral review." Campusano, 442 F.3d at 775.

Standing alone, Petitioner's claim that counsel failed to file a notice of appeal despite being asked to do so might have required a testimonial hearing. See id. at 776. However, Petitioner's claim is contradicted by Tomao's affirmation, in which Tomao states that, after sentencing, he advised Petitioner "that the appeal waiver provision would apply and that there was no basis to appeal the sentence" and that Petitioner "indicated that he understood this and advised us that he did not want to appeal his sentence. At no time did [Petitioner] request that I file a notice of appeal on his behalf." (Tomao Aff. ¶¶ 15-16.) Petitioner offers no reply to Tomao's affirmation.

No further fact development is necessary. The Second Circuit has made clear that, while some form of "hearing" is required where a section 2255 petitioner alleges that his lawyer failed to file a notice of appeal, such a hearing need not be "testimonial." Campusano, 442 F.3d at 776. Indeed, section 2255 grants the court substantial discretion to decide whether " 'allegations of facts outside the record can be fully investigated without requiring the personal presence of the prisoner.' " Chang v. United States, 250 F.3d 79, 85 (2d Cir. 2001) (quoting Machibroda v. United States, 368 U.S. 487, 495 (1962)). In particular, where a section 2255 petitioner alleges

ineffective assistance of counsel, but his factual assertions are contradicted by "a detailed affidavit from trial counsel credibly describing the circumstances," there is no requirement that a full testimonial hearing be held. Id.; see also Nicholson v. United States, 566 F. Supp. 2d 300, 304-05 (S.D.N.Y. 2008) (attorney affirmations contradicting section 2255 petitioner's claim that he asked his lawyers to file a notice of appeal were sufficient to obviate the need for an evidentiary hearing, particularly since petitioner offered no reply to those affirmations); Florez v. United States, No. 00-CV-5073 (DGT), 2007 WL 162764, at *4 (E.D.N.Y. Jan. 18, 2007) ("The determinative issue is whether or not [the section 2255 petitioner] directed [his lawyer] to file a notice of appeal. A review of the papers submitted by the parties, including a detailed affidavit from [the lawyer], are sufficient to decide this issue; a full testimonial hearing is unnecessary."). A court need not hold a full testimonial hearing where, as here, "such a hearing would not offer any reasonable chance of altering its view of the facts" and "the testimony of [Petitioner] and his trial counsel would add little or nothing to the written submissions." Chang, 250 F.3d at 86.

Tomao assiduously represented Petitioner in pursuing plea negotiations, notably convincing the government, between the time the Plea Agreement was signed and the time of sentencing, to adjust its proposed Guidelines calculation downward. Tomao also presented a very thorough, though not ultimately persuasive, argument at sentencing as to why the court should sentence Petitioner below the applicable Guidelines range. (Sentencing Tr. at 9-23.) In light of Tomao's demonstrated dedication to his client, and his sworn statement that Petitioner never asked him to file a notice of appeal, it is simply not plausible that Tomao, as Petitioner now self-servingly claims, simply ignored Petitioner's request that a notice of appeal be filed.

This court accepts Tomao's affirmation and concludes that the taking of live testimony is not necessary. Because the court finds that Petitioner did not ask counsel to file a notice of

appeal, and in fact told counsel that he did *not* wish to appeal, Petitioner's claim is denied. See Flores-Ortega, 528 U.S. at 477 ("[A] defendant who explicitly tells his attorney *not* to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently.") (emphasis in original).

### 3. Counsel's Failure to Object to Judicial Factfinding at Sentencing

Petitioner argues that the court violated United States v. Booker, 543 U.S. 220 (2005), by failing to require that a jury find, beyond a reasonable doubt, the facts upon which the sentencing range was based (*i.e.*, the loss amount, the number of victims, and the fact that "sophisticated means" were used). (Petition at 4; Pet. Mem. at 8-10.) Petitioner further argues that counsel was ineffective for failing to object to the court's supposed failure. (Id.)

As discussed *supra*, Petitioner knowingly and voluntarily waived such a challenge and that waiver is enforceable. See United States v. Roque, 421 F.3d 118, 121-22 (2d Cir. 2005) (waivers of the right to challenge a sentence, to the extent entered into knowingly and voluntarily, have been "consistently held enforceable"); Garcia-Santos v. United States, 273 F.3d 506, 508-09 (2d Cir. 2001) (waiver of right to challenge sentence via collateral attack is enforceable even as to claims relating to events that occurred after waiver, such as alleged ineffective assistance of counsel at sentencing).

In any event, Petitioner's view of the law is erroneous. Booker does not require that facts corresponding to a particular Guidelines range be found by a jury beyond a reasonable doubt, as long as that range, as here, is below the statutory maximum. See, e.g., United States v. Ahders, 622 F.3d 115, 119 (2d Cir. 2010) (facts supporting Guidelines range must be found by preponderance of the evidence); United States v. Awan, 607 F.3d 306, 312 (2d Cir. 2010)

(same); United States v. Garcia, 413 F.3d 201, 220 n.15 (2d Cir. 2005) ("Judicial authority to find facts relevant to sentencing by a preponderance of the evidence survives Booker.").

Furthermore, the court, at sentencing, did not engage in any factfinding beyond what had been stipulated to by the defense. In the Plea Agreement and at sentencing, the defense stipulated that the government's sentencing calculation was correct (with the exception of the upward adjustment for aggravating role, which the government ultimately agreed not to pursue). Thus, Petitioner effectively admitted to the underlying facts. See Booker, 543 U.S. at 232 (no Sixth Amendment problem where judge seeks to impose sentence based on facts "admitted by the defendant"). Certainly defense counsel cannot be considered to have provided ineffective assistance for failing to argue that the stipulated facts were erroneous. Since Tomao's strategy did not "fall below an objective standard of reasonableness," it was not constitutionally ineffective under Strickland v. Washington, 466 U.S. 668, 688 (1984).[6]

### 4. Counsel's Failure to Make a Speedy Trial Act Motion

In his final ineffectiveness claim, Petitioner argues that counsel was deficient for failing to make a motion to dismiss the indictment under 18 U.S.C. § 3161 *et seq.* (the "Speedy Trial Act"). (Petition at 8; Pet. Mem. at 18-19.) The Second Circuit has suggested that, where a section 2255 petitioner proceeds *pro se*, claims such as this should be addressed on the merits even where, as here, petitioner has waived his right to challenge his conviction and sentence.

---

[6] To the extent Petitioner argues that defense counsel was ineffective for stipulating to the truth of the government's allegations as to loss amount and number of victims, such an argument is refuted by Tomao. Tomao, in his affirmation, explains that, based on the trial of Petitioner's co-defendant, both Petitioner and Tomao were aware of the "substantial testimony" the government could have presented at Petitioner's trial to establish those facts. (See Tomao Aff. ¶ 11.) Tomao also explains that he feared that, if the defense demanded a hearing as to loss amount and number of victims, the court would impose a higher sentence by denying Petitioner credit for accepting responsibility. (Id.) Instead of challenging the loss amount and number of victims, Tomao presented a comprehensive argument for a below-Guidelines sentence, focusing on Petitioner's personal travails; Petitioner agreed to this strategy. (See Sentencing Tr. at 9-23; Tomao Aff. ¶¶ 13-14.) Such a strategy was reasonable.

See Parisi v. United States, 529 F.3d 134, 138-39 (2d Cir. 2008). The Second Circuit explained that an attorney who could successfully move to dismiss the indictment based on a Speedy Trial Act violation, but instead advises his client to plead guilty, provides such unreasonable advice that the voluntariness of the plea is implicated. See id. at 139.

Petitioner's claim fails on the merits, since there was no Speedy Trial Act violation. The Speedy Trial Act requires that a defendant who initially pleads not guilty be tried within 70 days of the unsealing of his indictment or his first appearance before a judge, whichever is later. 18 U.S.C. § 3161(c)(1). However, a district court may grant a continuance delaying trial where "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A).[7] In granting such a continuance, the district court must "set[] forth, in the record of the case, either orally or in writing, its reasons" for so finding. Id. That standard is met where, *inter alia*, a case "is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established" by the Speedy Trial Act. 18 U.S.C. § 3161(h)(7)(B)(ii).

Petitioner was initially charged in a 15-count, 11-defendant indictment, filed on February 23, 2004, and unsealed on March 29, 2004. (See Indictment, Pirgousis (Feb. 23, 2004); Order to Unseal Indictment, Pirgousis (Mar. 29, 2004).)[8] The initial status conference in the case was held on April 6, 2004, before Petitioner was arraigned. The prosecutor explained that the case involved a $21 million "complex securities fraud" encompassing two brokerage firms and four

---

[7] Prior to 2008, the relevant section was 18 U.S.C. § 3161(h)(8).

[8] A superseding indictment was filed January 26, 2005, this one naming five defendants, as some of the original 11 defendants had pleaded guilty. (See Superseding Indictment, Pirgousis (Jan. 26, 2005).)

12

public companies, and that the discovery the government planned to produce was "very extensive" and consisted of "at least 40 boxes of documents." (See Transcript of Status Conference, Pirgousis (Apr. 6, 2004), at 4-5.) The prosecutor asked that the case be designated "complex" for Speedy Trial Act purposes, "because of the number of defendants and because of the extensiveness of discovery." (Id. at 5.) After asking whether any of the parties objected to designating the case as complex "based upon the amount of discovery, the nature of the allegations and the number of defendants," and after then noting that there were no such objections, the court designated the case as complex "based on the government's representations." (Id. at 7-8.)

Petitioner was arraigned on April 12, 2004 (see Arraignment, Pirgousis (Apr. 12, 2004)), and the first status conference in which he participated was held on April 20, 2004. At this conference, the court informed defense counsel that the case had been designated complex, since "there are so many documents and there are so many transactions and it's going to take a great deal of time and effort on the part of counsel to understand what's going on in the case." (Transcript of Status Conference, Pirgousis (Apr. 20, 2004), at 3-4.) Defense counsel, when asked, did not object to the designation. (Id. at 4.)

At subsequent status conferences, the parties reiterated that a large amount of discovery material had to be produced and reviewed, and stated that the process was taking longer than expected. (See Transcript of Status Conference, Pirgousis (June 1, 2004), at 6; Transcript of Status Conference, Pirgousis (Sept. 30, 2004), at 5-6; Transcript of Status Conference, Pirgousis (Apr. 1, 2005), at 3-4.) At the June 1, 2004 and April 1, 2005 conferences, the court stated that, since there were no objections, the case would continue to be designated complex. (See

13

Transcript of Status Conference, Pirgousis (June 1, 2004), at 10; Transcript of Status Conference, Pirgousis (Apr. 1, 2005), at 6.)

Lengthy pretrial motions were filed by defendants, including Petitioner, on February 28, 2005 (see Motions to Dismiss, Pirgousis (Feb. 28, 2005)), and were denied on May 3, 2005 (see Memorandum & Order, Pirgousis (May 3, 2005)). After earlier trial dates had to be pushed back due to the amount of discovery and the resolution of the pretrial motions (see Transcript of Status Conference, Pirgousis (Sept. 30, 2004), at 5-6; Transcript of Status Conference, Pirgousis (Apr. 1, 2005), at 5-6), the court ordered that jury selection begin on September 19, 2005 (see Order, Pirgousis (Aug. 12, 2005)). Petitioner pleaded guilty on that day.

The court acted within its discretion in designating Petitioner's case as complex. The court is "vested with broad discretion" to delay the start of trial when necessary "to grant counsel further time to prepare in order to ensure a fair trial." See United States v. Gambino, 59 F.3d 353, 357 (2d Cir. 1995). The exclusion for complexity was, as required, "limited in time," id., 59 F.3d at 358, as trial dates were set, and was "reasonably related to the actual needs of the case," id., namely the need to work through extensive discovery and pretrial motions from multiple defendants. See United States v. Hernandez, 862 F.2d 17, 24 n.3 (2d Cir. 1988) ("It was hardly an abuse of discretion to hold a nineteen-defendant case to be complex.").

Petitioner relies on Zedner v. United States, 547 U.S. 489 (2006). (Pet. Mem. at 18-19.) In Zedner, the Court held that, in the absence of a finding by the court that the "ends of justice" justify extending the time for trial, a defendant may not prospectively and "for all time" waive the applicability of the Speedy Trial Act. See 547 U.S. at 500-03. Unlike in Zedner, in Petitioner's case, the court made an "ends of justice" finding, noting on the record the "the amount of discovery, the nature of the allegations and the number of defendants." The court

14

subsequently set trial dates, which twice had to be pushed back, and twice reiterated its designation of the case as complex. These designations were not based on any defendant's open-ended, prospective waiver of the applicability of the Speedy Trial Act, as in Zedner. See United States v. Breen, 243 F.3d 591, 596-97 (2d Cir. 2001) (court made appropriate "ends of justice" finding where it made clear that it was excluding time until trial date and set forth reasons for doing so, even though court did not utter the words "ends of justice").

Since there was no violation of the Speedy Trial Act, Petitioner's counsel was not ineffective for failing to move to dismiss the indictment on such grounds.

### C. Petitioner's Prosecutorial Misconduct Claim

Petitioner claims that the Assistant U.S. Attorney who handled his case, Michael Asaro, committed misconduct and should have been disqualified because, while previously employed at the SEC, he participated in an investigation of Petitioner. (Petition at 7; Pet. Mem. at 15-18.) Asaro, in an affirmation included with the government's papers (Affirmation of Michael Asaro ("Asaro Aff.") (Gov. Mem. Ex. 5)), explains that, prior to working at the U.S. Attorney's Office, he was a Branch Chief for the SEC's New York Regional Office, where he oversaw the investigation of Delta Asset Management, a brokerage firm involved in the conspiracy with which Petitioner was charged; during the course of the investigation, Petitioner was deposed. (Id. ¶¶ 2-3.) Asaro states that he was only involved in the early stages of the investigation, and that Petitioner was deposed only after Asaro left the SEC. (Id.)

Petitioner's claim of misconduct is baseless. Petitioner first argues that Asaro had an unseemly personal interest in prosecuting Petitioner, in particular, that he "aspired to a position with the U.S. Attorney office" [sic] and that he used the SEC investigation to "leverage[] himself into the AUSA position." (Pet. Mem. at 17.) Petitioner presents absolutely no evidence in

15

support of this claim, and it is contradicted by Asaro, who states that he "had no personal interest in the case while at the SEC nor while at the United States Attorney's Office" and that "[i]n no way did [he] 'leverage' this case into a job at the United States Attorney's Office." (Asaro Aff. ¶ 5.) Nor did Asaro's handling of the prosecution after having participated in an investigation of Petitioner undertaken by a different agency of the government create any presumption or appearance of impropriety. See United States v. Terry, 17 F.3d 575, 577-78 (2d Cir. 1994).

Petitioner also argues that Asaro, through the SEC investigation, obtained information that gave him an unfair advantage in the criminal prosecution. (Pet. Mem. at 17.) But Petitioner does not point to anything specific that would have created such an advantage. See Terry, 17 F.3d at 578 (no evidence that New York Attorney General, who was appointed to criminally prosecute defendant, gained any unfair litigation advantage through discovery obtained in related civil case that Attorney General had brought against defendant). Indeed, Asaro, in his affirmation, makes clear that his involvement in the SEC investigation was limited, and that he left before Petitioner was deposed. In any event, since Petitioner pleaded guilty, and since the defense stipulated to the facts that were the basis for the guilty plea, any informational advantage Asaro might have gained through the SEC investigation went unused.

Petitioner also argues that Asaro violated his disclosure obligations under Brady v. Maryland, 373 U.S. 83 (1963), by not revealing exculpatory evidence he learned during the SEC investigation. In particular, Petitioner claims that Asaro found out that Petitioner's co-defendants had "stolen [his] identity and [his] funds," that, as a result, Petitioner was "bankrupt[ed]," and that Petitioner did not "receive any funds from this so-called conspiracy." (Pet. Mem. at 17-18.) Petitioner argues that this constituted exculpatory evidence, since, as he puts it, "if I was a co-conspirator, why did they steal my money (225,000) and identity . . . ?"

(Id. at 17.) In response to Petitioner's claims, Asaro states that he "learned of no exculpatory matters in the case while working at the SEC." (Asaro Aff. ¶ 5.)

Even if it is true that Asaro, during the SEC investigation, learned of the facts Petitioner alleges, Petitioner does not indicate whether he himself was aware of those facts when he pleaded guilty. If he was, there was no due process violation. See DiSimone v. Phillips, 461 F.3d 181, 197 (2d Cir. 2006) (evidence is not "suppressed" for Brady purposes if defendant knew, or should have known, of facts permitting him to take advantage of any exculpatory evidence). Indeed, Petitioner would almost certainly have been aware, before his plea, of his own claimed bankruptcy and lack of profit from the charged conspiracy, even if he was not yet aware that his co-defendants, as he claims, had stolen his identity and money.

Even assuming that Petitioner was betrayed by his co-conspirators, that he was not aware of the betrayal when he pleaded guilty, and that such a betrayal should be considered exculpatory evidence, there is no basis for granting Petitioner's claim, since the Second Circuit has strongly suggested that exculpatory evidence need not be disclosed prior to a guilty plea. See Friedman v. Rehal, 618 F.3d 142, 153-54 (2d Cir. 2010). Certainly the instant case does not represent an appropriate occasion to hold otherwise, given Petitioner's waiver of his right to challenge his sentence and the weak factual basis for this claim.

Finally, Petitioner argues that Asaro should have disclosed, under Giglio v. United States, 405 U.S. 150 (1972), that prospective prosecution witnesses had been "given sweetheart deals or were not prosecuted at all." (Id. at 18.) It is clear that such evidence did not have to be disclosed prior to Petitioner's plea. See Friedman, 618 F.3d at 153 (failure to disclose impeachment information prior to a guilty plea does not violate due process) (citing United States v. Ruiz, 536 U.S. 622 (2002)).

In sum, Petitioner has not sufficiently demonstrated that Asaro's work at the SEC prior to Petitioner's prosecution required Asaro's disqualification or led to any violations of Petitioner's due process rights.

## III. CONCLUSION

For the foregoing reasons, the Petition is DENIED. Because Petitioner has not made a substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. See 28 U.S.C. § 2253(c)(2); Lozada v. United States, 107 F.3d 1011 (2d Cir. 1997). The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated: Brooklyn, New York
January 7, 2011

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge